FILED

2013 Sep-30  AM 11:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN  DIVISION

| | |
|---|---|
| **QUINN E. MCCLAIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civil Action No.: 2:11-cv-3963-SLB** |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Quinn McClain ("Plaintiff") brings this action pursuant to Title II of Section 205(g) and Title XVI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration[1] ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI").  *See also* 42 U.S.C. §§ 405(g), 1383(c).  After careful review, the court finds that the decision of the Commissioner is due to be affirmed.

## I.      Proceedings Below

Plaintiff protectively applied for DIB and SSI on July 30, 2007 alleging disability beginning on May 16, 2007. [R. 60-61].   The Social Security Administration denied Plaintiff's claims on November 9, 2007. [R. 70].  At Plaintiff's request [R. 76-77], an administrative law judge ("ALJ") held a hearing on August 4, 2009. [R. 42-59].  On December 16, 2009, the ALJ entered his decision

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Therefore, she should be substituted for Commissioner Michael J. Astrue as Defendant in this suit.  *See* Fed. R. Civ. P. 25(d)  ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending.  Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded.").

denying both applications. [R. 30-38].  Plaintiff requested a review of the ALJ's decision.  [R. 25-26].  The Appeals Council denied Plaintiff's request,[2] making the Commissioner's decision final and a proper subject of this court's judicial review.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

### A.    Plaintiff's Hearing Testimony

Plaintiff was forty-seven years old at the time of the hearing. [R. 50].  Plaintiff graduated from high school and completed two years of college but did not receive a degree. [R. 50-51].  Plaintiff testified that he last worked in 2006 and had been performing various jobs through a temporary placement agency. [R. 51].   Most recently, Plaintiff had worked at a plant as a forklift driver and machine operator. [R. 51].  Plaintiff stated that he stopped working because he injured his back when he slipped off a moving truck ramp. [R. 52].

Plaintiff testified that his back pain prevented him from "sit[ting] too long" or "standing too long." [R. 52].  According to Plaintiff, he was "constantly in pain." [R. 52].   Plaintiff also explained that he had a pinched nerve in his back and that one disc was bulging and another deteriorating. [R. 52].  Plaintiff testified that his "spine [was] just sitting on the nerve." [R. 52].

In response to a question from his attorney, Plaintiff explained why he had been leaning to the right in his chair during the hearing. [R. 53].  Plaintiff testified that he "hurt[s] on the left side" and that if he sits up straight he is in "severe pain." [R. 53].  Plaintiff stated that he sits on the right side to take some of the pressure off the left side of his body. [R. 53].  One of Plaintiff's doctors recommended surgery but Plaintiff testified that he did not want surgery because the doctor told him

---

[2]  Although the Appeals Council agreed that Plaintiff was not disabled, it found the jobs cited in the hearing decision were inconsistent with Plaintiff's assessed RFC and concluded that Plaintiff could perform only unskilled sedentary work. [R. 5]. Based upon this determination, the Appeals Council found that Plaintiff could perform work as a semiconductor bonder and that these jobs existed in a significant number in the national and local economy. [R. 7].

there was a "50-50 chance that  [he] might walk" and because the doctor could not guarantee Plaintiff would be pain free. [R. 53].  Plaintiff had undergone physical therapy to help his back pain. [R. 53].

### B.    Medical Records

Plaintiff submitted various medical records in support of his claims.

### 1.    Hospital and Clinic Visits

Plaintiff visited the Cooper Green Hospital Emergency Room on May 7, 2007. [R. 210]. Plaintiff reported that he was experiencing low back pain after slipping off a ramp two weeks earlier. [R. 210].  Some of the treatment notes are illegible.  However, Plaintiff demonstrated normal gait and station. [R. 211].  Plaintiff was diagnosed with a low back strain and was prescribed various pain medication. [R.  211].

Plaintiff returned to Cooper Green on July 19, 2007 and was seen by a neurologist. [R. 202-204].  Plaintiff reported he was experiencing back pain radiating down his left leg. [R. 203].  Upon examination, Plaintiff demonstrated positive straight leg raise. [R. 204].  A CT scan of his lumbar spine noted L5-S1 disc bulge protrusion. [R. 204].  Plaintiff was diagnosed with sciatica and nerve impingement. [R. 204].

Examination notes from an August 7, 2007 visit to Cooper Green Hospital's Emergency Room indicate that Plaintiff was experiencing chronic back pain with radiculopathy. [R. 324].  X-rays taken during that visit displayed a medium-sized left paracentral disc bulge protrusion at L5-S1 displacing the nerve and left gutter.

On August 21, 2007, Dr. Jeremy Allen, M.D., Plaintiff's treating physician at Cooper Green, diagnosed Plaintiff with back pain and radiculopathy. [R. 232].  Dr. Allen requested an MRI of

Plaintiff's lumbar spine, which was completed on September 8, 2007 at St. Vincent's Hospital. [R. 320]. The MRI of Plaintiff's showed mild diffuse disc bulging at L4-5. [R. 320]. The MRI also displayed a prominent left-sided disc herniation at the L5-S1 level. [R. 320]. The extruded disc fragment was seen extending downward to the left along the course of the left S1 nerve root. [R. 320].

Plaintiff was referred by Cooper Green Hospital to Dr. Patrick Pritchard, M.D., at the Kirkland Clinic on May 23, 2008. [R. 196]. Examination notes indicate that Plaintiff had "some pain with plantar flexion of his left foot but ha[d] good motor strength." [R. 196]. A sensory exam "revealed some paresthesia over the lateral aspect of the left foot, as well as leg in S1 distribution." [R. 196]. Plaintiff's left ankle jerk reflex was "notably diminished" and on straight leg raise, Plaintiff "ha[d] a significant reproduction of his pain down the left lower extremity." [R. 196].

On November 11, 2008, Plaintiff saw Dr. Pritchard again. [R. 195]. During this visit, Plaintiff complained he had developed recurring pain that was radiating down his left leg to his left foot. [R. 195]. Again, Plaintiff's exam demonstrated decreased reflex on the left foot and a "persistent positive straight leg raise on the left." [R. 195]. Dr. Pritchard discussed surgical options with Plaintiff but he wished instead to receive physical therapy. [R. 195]. The record reflects that Plaintiff attended physical therapy sessions at Cooper Green Hospital once a week for two months beginning on January 5, 2009 and ending on March 13, 2009. [R. 266-273, 277].

Dr. Mamerhi Okor, M.D., examined Plaintiff at the Kirklin Clinic on February 27, 2009. [R. 297]. Plaintiff reported that he was "moving around a lot better since beginning therapy." [R. 297]. During this visit, Plaintiff demonstrated "mild weakness of dorsiflexion and plantar flexion of the left foot" but was "able to perform heel and toe gait without difficulty." [R. 297]. According to

4

treatment notes, Plaintiff was "making satisfactory progress with conservative management" through physical therapy and Dr. Okor noted that the he would see Plaintiff on an as-needed basis if his symptoms recurred or progressed. [R. 297].

### 2.   Treating, Consultative, and State Agency Assessments

On October 3, 2007, Dr. Peter Morris, M.D., performed a consultative examination. [R. 235-237]. Plaintiff reported pain in his back that radiated down the left leg to his toes. [R. 235]. Dr. Morris noted Plaintiff's history of back problems including a lumbar laminectomy in 1993 due to lumbar disc disease. [R. 235]. Plaintiff indicated that he was taking a variety of prescription medication but stated he was still in a great deal of pain. [R. 235]. Examination notes reflect that Plaintiff's lumbar flexion was limited to about 20 degrees. [R. 237]. The exam revealed positive straight leg raising on the left at 40 degrees. [R. 237]. Dr. Morris found no muscle atrophy but noted a "decrease to absent sensation to pinprick and vibration of the left leg and the knee particularly at the lateral aspect." [R. 237].

On November 9, 2007, Audrey Finch, a state agency disability examiner completed a physical RFC assessment. [R. 244-251]. Based upon a review of Plaintiff's medical records, Finch determined that Plaintiff has the following physical limitations: occasionally lift and/or carry up to 20 pounds; frequently lift and/or carry up to 10 pounds; stand or walk (with normal breaks) for a total of six hours in an 8-hour work day; sit (with normal breaks) for a total of six hours in an 8-hour work day; and, unlimited pushing and/or pulling (including operation of hand and/or foot controls). [R. 245]. Regarding postural limitations, Finch opined that Plaintiff could: frequently climb ramp or stairs but should never climb ladders, ropes, or scaffolding; frequently balance; and occasionally stoop, kneel, crouch, and crawl. [R. 246]. Finch further determined that Plaintiff had no

5

manipulative, visual, or communicative limitations.  However, Finch did state that Plaintiff should avoid concentrated exposure to extreme cold or heat, vibrations, and hazardous machinery and heights. [R. 248].

On January 11, 2008, Dr. Allen completed a Physical Capabilities Assessment ("PCA") and a Clinical Assessment of Pain based upon his clinical evaluation of Plaintiff and other testing.  Dr. Allen indicated that Plaintiff was able to lift 20 pounds occasionally and 10 pounds frequently. [R. 259].  He further opined that Plaintiff could sit for two hours during an 8-hour work day and could stand for one hour in an 8-hour work day. [R. 259].  The PCA also notes that Plaintiff could occasionally push and pull, engage in gross manipulation such as grasping, twisting, and handling, bend, stoop, and reach. [R. 259].  According to Dr. Allen, Plaintiff should never climb stairs or ladders or balance but he could frequently engage in fine manipulation. [R. 259].  Although the PCA states that Plaintiff should never work around hazardous machinery, it suggests Plaintiff could operate a motor vehicle and work around dust, allergen, and fumes. [R. 259].  Dr. Allen's Clinical Assessment of Pain indicates that Plaintiff's pain was present to such an extent to be distracting to adequate performance of daily activities or work. [R. 261].  Dr. Allen also opined that physical activity would greatly increase Plaintiff's pain to such a degree as to cause distraction from tasks or total abandonment of tasks. [R. 261].

On August 14, 2008 and January 14, 2009, Dr. Allen provided Plaintiff with letters attempting to excuse him from work.  Both letters state that Plaintiff is "unable to compete in the competitive job market" due to his "uncontrolled" or "severe" back pain. [R. 190, 293].

On May 8, 2009, Dr. Allen completed a second PCA, in which he opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently. [R. 301].  Dr. Allen also opined

6

that Plaintiff could sit for up to six hours in an 8-hour work day but could stand and walk for only one hour in an 8-hour work day. [R. 301].  Dr. Allen further indicated that Plaintiff should never climb stairs or ladders but could occasionally engage in pushing and pulling movements, bend, stoop, and reach. [R. 301].  Dr. Allen's PCA also noted that Plaintiff could frequently engage in gross and fine manipulation including grasping, twisting, and handling. [R. 301].  Although Dr. Allen opined that Plaintiff should not work around hazardous machinery, his PCA states that Plaintiff can operate motor vehicles and can work around dust, allergens, or fumes. [R. 301].

Dr. Allen also completed a second Clinical Assessment of Pain, in which he indicated that Plaintiff's pain was present to such an extent as to be distracting to adequate performance of daily activities or work. [R. 302].  Dr. Allen also noted that physical activity, including walking, standing, bending, stooping, and moving extremities would greatly increase Plaintiff's pain to such a degree as to cause distraction from tasks or total abandonment of tasks. [R. 302].  Additionally, as part of a Clinical Assessment of Fatigue and Weakness, Dr. Allen indicated that fatigue and weakness was present but did not prevent Plaintiff from functioning in everyday activities or work. [R. 304].  Moreover, according to Dr. Allen, physical activity would cause some increase in Plaintiff's level of fatigue and weakness but not to an extent that would prevent adequate functioning. [R. 304].

### C.    Vocational Expert Hearing Testimony

According to a vocational expert ("VE") who testified at the hearing, Plaintiff's past relevant work included general laborer, forklift operator, and machine operator. [R. 55].  In response to hypotheticals posed by the ALJ, the VE testified that someone of Plaintiff's age, education, work experience, and residual functional capacity ("RFC") could not perform his past relevant work but could perform work as a packager, storage facility clerk, marker or semiconductor bonder, optical

goods polisher, or inspector of small parts. [R. 56-57].  In response to a hypothetical posed by the ASJ based upon Dr. Allen's physical capacity evaluation, the VE testified that Plaintiff could not perform his past work or any other work.  [R. 58].

## II.   ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  (*Id.*).  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. §

404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  (*Id.*).  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the instant case, the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2008. [R. 32].  The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since May 16, 2007, the alleged onset date. [R. 32].  According to the ALJ, Plaintiff has lumbosacral radiculopathy secondary to left-sided L5-S1 disc herniation, which is a severe impairment. [R. 32].  Nonetheless, the ALJ determined that Plaintiff does not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 32].  After consideration of the entire record, the ALJ found that Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) with the following limitations: occasionally lift 20 pounds; sit for up to six hours in an 8-hour work day; stand/walk for up to two hours in an 8-hour work day; would need the ability to sit or stand at his option; could not be required to push or pull with respect to foot or leg controls; could not be exposed to continuous vibration; could not work around unprotected heights or hazardous machinery; could not operate a motor vehicle; could not be exposed to extremes of temperature or humidity; and could occasionally bend, stoop, or reach. [R. 34].  Although the ALJ

concluded that Plaintiff could not perform his past relevant work, based upon testimony from the VE, he did find that jobs existed in the national economy that Plaintiff could perform including: packager of small parts; storage facility clerk; and, marker of semi-conductor wafers. [R. 38]. Based upon this analysis, the ALJ determined that Plaintiff is not disabled as the term is defined in the Act. [R. 38].

## III.    Plaintiff's Argument for Reversal

Plaintiff seeks to have the Commissioner's decision reversed, or in the alternative, remanded for further proceedings.  Plaintiff's sole argument in this appeal is that the ALJ did not properly consider the opinions of Plaintiff's treating physician, Dr. Allen, in making his RFC findings. [Pl.'s Mem. 9].

## IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c)(3) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.*  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence;

"[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.    Discussion

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ did not properly consider the opinions of Plaintiff's treating physician. The court disagrees.

The Eleventh Circuit has held that the opinion of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985)). Social Security regulations echo this preference:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from other reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 1527(c).

"Good cause" has been found when "the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding." *Lewis*, 125 F.3d at 1440 (quoting *Schnorr v.*

*Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *Sharfaz v. Bowen*, 825 F.2d 278, 280-81 (11th Cir. 1987)).   The Eleventh Circuit has also found "good cause" when "the doctors' opinions were conclusory or inconsistent with their own medical records." *Lewis*, 125 F.3d at 1440 (quoting *Jones v. Department of Health & Human Services*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991)).   The Commissioner "must specify what weight is given to a treating physician's opinion," *MacGregor*, 786 F.2d at 1053, and an ALJ's failure to clearly articulate the reasons for giving less weight to the opinion of a treating physician constitutes reversible error.  *Lewis*, 125 F.3d at 1440.

The Commissioner's regulations also specifically provide that certain decisions are reserved for the Commissioner.  *See* 20 C.F.R. § 1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").   A Social Security Administration policy interpretation further clarifies that because statements that an individual is disabled are "administrative findings that may determine whether an individual is disabled, they are reserved to the Commissioner.  Such opinions on this issues must not be disregarded.  However, even when offered by a treating source, they can never be entitled to controlling weight or given special significance."  Social Security Ruling 96-5p; *see also Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) ("The regulation in 20 C.F.R. § 404.1527 provides that although a claimant's physician may state he is 'disabled' or 'unable to work' the agency will nevertheless determine disability based upon the medical findings and other evidence.").

Substantial evidence supports the ALJ's decision to reject Dr. Allen's opinion.  The ALJ noted that he gave little weight to the opinions of Dr. Allen to the extent his opinions were not consistent with the ALJ's RFC findings. [R. 36].  The ALJ further noted that he rejected Dr. Allen's

opinion that Plaintiff could not compete in a competitive work environment. [R. 36].   As it relates to the RFC, the ALJ did not reject Dr. Allen's opinions in their entirety.  And, in fact, the ALJ noted that Dr. Allen's January 2008 and May 2009 physical capabilities evaluations were "to a large extent . . . consistent" with the ALJ's RFC determination. [R. 36].  On this point, the ALJ noted Dr. Allen's opinions concerning the following limitations were entirely consistent with the RFC determination: that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; that Plaintiff could occasionally stoop, bend, and reach; and, that Plaintiff cannot work around hazardous machinery. [R. 36].  Additionally, the ALJ noted that Dr. Allen's opinion that Plaintiff could sit for six hours and stand/walk for one hour in an 8-hour work day was "largely consistent" with the RFC findings. [R. 36].  The ALJ further noted that the RFC determination accounted for additional limitations not suggested by Dr. Allen.  Specifically, although Dr. Allen found Plaintiff could occasionally perform pushing and pulling movements and could operate a motor vehicle,  the assessed RFC limited Plaintiff's pushing and pulling with respect to foot controls and does not permit Plaintiff to operate a motor vehicle.  [R. 36].

As a basis for rejecting Dr. Allen's opinions that Plaintiff could not compete in the competitive work environment or that Plaintiff could work only seven hours a day , the ALJ noted that Plaintiff's own reports to an examining physician in February 2009 are not consistent with Dr. Allen's opinions. [R. 36].  Specifically, Plaintiff indicated that he "was moving around a lot better since beginning therapy" and was found to be "making satisfactory progress with conservative management in the form of physical therapy." [R. 36; 298].   By February 2009, Plaintiff also performed heel and toe gait without difficulty.  [R. 36; 298].   Plaintiff also told his doctor at this time that he was "pleased with his current situation with regard to low back and left leg

13

symptomology."  [R. 36; 298].

Additional evidence of record supports the ALJ's decision to reject  Dr. Allen's opinion. In October 2007, about six months after Plaintiff injured himself moving furniture (and about five months after he allegedly became disabled) [R. 51-52; 108; 207; 210], Dr. Morris examined Plaintiff and did not observe significant  limitations. [R. 235].  At this time, Dr. Morris observed Plaintiff's arm and leg strength were 5/5.  Dr. Morris also noted that Plaintiff had a "normal" gait and station despite a "slight" limp. [R. 35, 236, 238].  Dr. Pritchard's findings also support the ALJ's RFC determination.  When he first examined Plaintiff in May 2008,  Dr. Pritchard observed Plaintiff's strength in his arms and legs was a 5/5.  He also noted that Plaintiff had "good strength." [R. 196]. Dr. Pritchard's November 2008 notes indicated that Plaintiff would heel, toe, and tandem walk with only "very slight" difficulty despite a herniated disc.  [R. 195].  The court finds this additional objective medical evidence supports the ALJ's observation that Plaintiff's medical records showed "continuing improvement" in his condition and the corresponding decision to reject Dr. Allen's opinions.  *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (permitting the ALJ to weigh medical opinions based upon consistency with other evidence).

In sum, based upon the foregoing, the court concludes that substantial evidence supports the ALJ's decision to reject "the notion implicit in Dr. Allen's opinion that [Plaintiff] could work only 7 hours a day and not a full 8-hour work day."  [R. 36].   The ALJ provided specific reasons for according little weight to Dr. Allen's physical limitations to the extent they were inconsistent with the RFC findings.  Moreover, the ALJ rejected Dr. Allen's opinion that Plaintiff could not compete in the competitive work environment on the basis that this opinion was  inconsistent with medical records as well as with the Plaintiff's own testimony. *See e.g.,  Phillips v. Barnhart*, 357 F.3d 1232,

14

1241 (11th Cir. 2004) (ALJ's decision that treating physician's opinion should be given little weight was supported by substantial evidence because he identified several specific contradictions between his opinion and other evidence of record including claimant's own statements and medical records from examining or consultative physicians).  Accordingly, the Commissioner's decision is due to be affirmed.

**VI.    Conclusion**

    For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied. Therefore, the Commissioner's final decision is due to be affirmed.  A separate order in accordance with this memorandum opinion will be entered.

    **DONE**, this 30th day of September, 2013.


SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE